UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 14, 2017

LETTER TO COUNSEL

RE: *James Anderson, Jr. v. Commissioner, Social Security Administration*
Civil No. SAG-17-175

Dear Counsel:

On January 19, 2017, Plaintiff James Anderson, Jr. petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment [ECF Nos. 15, 18], and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Anderson's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Anderson protectively filed his claim for SSI on May 23, 2013, alleging a disability onset date of April 19, 2013. (Tr. 139-48). His claim was denied initially and on reconsideration. (Tr. 54-72). A hearing was held on June 15, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 29-53). Following the hearing, the ALJ determined that Mr. Anderson was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-28). The Appeals Council denied Mr. Anderson's request for review, (Tr. 1-3), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Anderson suffered from the severe impairments of "status post fractured cervical spine; status post cervical surgery; cervical stenosis; and radiculopathy involving the right upper extremity." (Tr. 16). Despite these impairments, the ALJ determined that Mr. Anderson retained the residual functional capacity ("RFC"):

> to lift 20 pounds occasionally and 10 pounds frequently . . . [to] stand for 6 hours out of an 8-hour workday, walk for 6 hours out of an 8-hour workday and sit for 6 hours out of an 8-hour workday . . . [to] perform light work as defined in 20 CFR § 416.967(b). Except that he is limited to frequently stooping or crouching; occasionally reaching in all directions including overhead on the right side; and occasionally pushing and pulling on the right side.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Anderson could perform jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 23-24).

Mr. Anderson raises two arguments on appeal: (1) that the ALJ failed to apply the proper legal standard in discrediting his credibility and subjective evidence of pain; and (2) that the ALJ erroneously assessed his RFC. [ECF No. 15-1 at 3-8]. These arguments are addressed, in turn, below.

I. **The ALJ's Credibility Finding**

Mr. Anderson argues that the ALJ, in finding him "not fully credible," (Tr. 19), erred by "fail[ing] to provide any assessment of which of [his] statements he [sic] found to be credible, and which she did not." [ECF No. 15-1 at 3]. Specifically, Mr. Anderson relies on *Hammond v. Hecker*, 765 F.2d 424, 426 (4th Cir. 1985); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); and *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2016), which require the ALJ to "refer specifically to the evidence informing the ALJ's conclusion" in making a credibility determination and to "articulate which of a claimant's individual statements are credible, rather than" analyzing whether a claimant is credible "as a general matter." [ECF No. 15-1 at 3-5].

As background, in *Lewis*, the United States Court of Appeals for the Fourth Circuit determined that remand was required, in part, because "[t]he ALJ's decision applied an improper legal standard to discredit [the claimant's] [credibility]." 858 F.3d at 870. Specifically, the Fourth Circuit held that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions. *Id.* at 866. Social Security regulations do not permit an ALJ to "reject [a claimant's] statements about the intensity and persistence of [] pain or other symptoms or about the effect [those] symptoms have on [a claimant's] ability to work *solely* because the available objective medical evidence does not substantiate [his or her] statements." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added); *see* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Rather, the Fourth Circuit emphasized that the ALJ failed to "explain in his decision what statements by [the claimant] undercut [the] subjective evidence . . . as limiting [the claimant's] functional capacity." *Lewis*, 858 F.3d at 866. Accordingly, the *Lewis* Court remanded because the ALJ failed to cite sufficient evidence of the claimant's own statements to discredit her credibility. Likewise, Mr. Anderson contends that the ALJ "failed to identify the statements concerning the intensity, persistence, and limiting effects of [his] symptoms which she found to be not entirely credible, and failed to explain how she decided which of [his] statements to believe and which to discredit." [ECF No. 15-1 at 5].

The Commissioner, meanwhile, contends that, pursuant to SSR 96-7p, the ALJ properly evaluated Mr. Anderson's credibility. [ECF No. 18-1, 4-7]. In effect at the time of the ALJ's decision, SSR 96-7p provides that, in assessing a claimant's credibility, "the adjudicator must

consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186 at *1. Defendant argues that the ALJ complied with this standard by citing: (1) the objective medical evidence, which "fail[ed] to provide strong support for [his] allegations;" and (2) Mr. Anderson's testimony regarding his allegations of pain, his reported daily activities, his statements to medical sources, and his poor work history. [ECF No. 18-1 at 5-7].

I disagree that the ALJ erred in finding that Mr. Anderson was "not fully credible." (Tr. 19). The scope of the *Lewis* ruling need not be determined in the instant case because the ALJ, in discounting Mr. Anderson's credibility, expressly cited sufficient evidence of his own statements that were inconsistent with his allegations of symptoms. For example, the ALJ noted that Mr. Anderson, in an August, 2013 consultative examination for his alleged impairments, admitted that he "attempted to work out and lift weights." (Tr. 19, 279). Further, the ALJ noted Mr. Anderson's admission that he "has no problems" with personal care tasks and will "do laundry; iron clothes; drive; travel; by walking and using public transportation; pay bills; count change; handle a savings account; use a checkbook; attend church; complete tasks; and pay attention 'pretty good.'" (Tr. 19). Thus, the ALJ adequately "explain[ed] in [her] decision what statements by [Mr. Anderson] undercut [the] subjective evidence . . . as limiting [his] functional capacity." *See Lewis*, 858 F.3d at 866. Moreover, the ALJ provided substantial objective record evidence to support her conclusion. *See* (Tr. 18-22); *see also* SSR 96-7p, at *6 (noting that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is [] one factor that the adjudicator must consider in assessing an individual's credibility."); *see Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citation omitted). Accordingly, the ALJ, by considering Mr. Anderson's "objective medical evidence, . . . daily activities, efforts to work . . . [and subjective] description[s] of pain," properly assessed his credibility. *See Bostic v. Astrue*, 474 F. App'x 952, 954 (4th Cir. 2012). Remand on this basis is therefore unwarranted.

## II.     Residual Functional Capacity ("RFC") Issue

Mr. Anderson next argues that the ALJ erroneously assessed his RFC by failing to provide a function-by-function assessment of his ability to perform the physical and mental demands of work. [ECF No. 15-1 at 7]. Specifically, Mr. Anderson contends that the ALJ failed to "properly perform this assessment" because she: (1) mischaracterized the opinions of the consultative examiner, Dr. Seth Tuwiner; and (2) "failed to recognize that [his] symptoms were not limited to his right upper extremity." *Id.* at 8.

Social Security regulations provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8P, 1996 WL 374184, at *7 (1996)). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to

his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). With respect to physical RFC, "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Meanwhile, nonexertional capacity considers limitations not dependent on an individual's physical strength including "postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)[,]" activities. *Id.* at *6.

Here, in according the opinion "great weight," the ALJ incorrectly determined that Dr. Tuwiner stated that Mr. Anderson "could frequently bend, stoop, or crouch." (Tr. 22). Instead, Dr. Tuwiner opined that Mr. Anderson had "frequent postural limitations with bending, stooping and crouching[]" and that "[f]requent bending, stooping or crouching may exacerbate his underlying neck problem." (Tr. 281). At step five of the sequential evaluation, the ALJ then concluded that Mr. Anderson could perform occupations existing in significant numbers in the national economy, including an "Office helper." (Tr. 23-24). The Dictionary of Occupational Titles ("DOT") makes clear, however, that an "Office helper" requires no kneeling or crouching and stooping only "up to 1/3 of the time."[1] Thus, because an "Office helper" requires only occasional "stooping," the occupation aligns with Dr. Tuwiner's opinions, and the ALJ's mischaracterization of those opinions is harmless error.[2]

Finally, Mr. Anderson contends the ALJ erred by "fail[ing] to recognize that [his] symptoms were not limited to his right upper extremity . . . [but] were bilateral, right greater than left." [ECF No. 15-1 at 8]. Specifically, though the record included his complaints of bilateral upper extremity limitations, (Tr. 20-21), Mr. Anderson argues that the ALJ "failed to include any manipulative limitation related to [his] left upper extremity, without explanation." [ECF No. 15-1 at 8]. I disagree. The ALJ, while referencing Mr. Anderson's subjective complaints, expressly cited medical evidence, which demonstrated that: (1) in April, 2013, he had "full strength in his bilateral upper . . . extremities[;]" (2) in July, 2013, he had "normal muscular build without any wasting in both upper extremities[;]" (3) in August, 2013, he had "normal range of motion in his . . . shoulders" and a "[n]ormal gait with symmetrical arm swing[;]" (4) in September, 2013, he stated he was "doing well other than some right upper extremity pain[;]" (5) in October, 2014,

---

[1] Importantly, though utilized by Dr. Tuwiner and the ALJ, DOT job descriptions do not use the term "bend." SSR 85-15, however, provides that bending the legs constitutes "kneeling," solely bending the spine constitutes "stooping," and bending both the legs and the spine constitutes "crouching." SSR 85-15, 1985 WL 56857, at *2 (S.S.A. 1985).

[2] The Commissioner, relying upon the DOT citation provided by the ALJ ("311.677-010"), further argues that a "Counter attendant" also requires no kneeling or crouching and stooping only "up to 1/3 of the time." [ECF No. 18-1 at 9]; (Tr. 23). This is incorrect. Job number 311.677-010 is for a "Cafeteria attendant." DOT, *cafeteria attendant*, job no. 311.677-010, *available at* 1991 WL 672694. Instead, while "Counter attendant" requires no kneeling, it does require occasional crouching and frequent stooping. DOT, *counter attendant*, job no. 311.677-014, *available at* 1991 WL 672695. Nonetheless, because the occupation of "Office helper" comports with Dr. Tuwiner's opinion, this error is also harmless.

"he had full strength [and normal sensation] in his upper extremities[] [and] negative Spurling's and Hoffman tests bilaterally[;]" and (6) in February, 2015, he had "normal range of motion and inspection of his extremities." (Tr. 20-21, 251-59, 275, 281, 288, 296, 340-41). Thus, the objective medical evidence, coupled with the State Agency consultants' medical opinions, provides substantial evidence to support the ALJ's RFC assessment.

### III.     Conclusion

For the reasons set forth above, Mr. Anderson's Motion for Summary Judgment [ECF No. 15] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 18] is GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge